## Le COMPTE v. JONES.

No. 18997.  Opinion Filed March 12, 1929.

Bond, Hatcher & Bond, for plaintiff in error.

Bailey & Hammerly, for defendant in error.

JEFFREY, C.  On or prior to May 9, 1923, E. LeCompte, who will herein be referred to as plaintiff, owned and operated a number of shoe stores in different cities in Oklahoma. The main or head store, known as the "Booterie," was located at Oklahoma City, and one known as the "Booterie 5th Store" was located in Chickasha, Okla. For several years prior to 1923, one R. L. Jones, who will herein be referred to as defendant, was plaintiff's employee in the Chickasha store, and a part of that time he was manager of said store. Plaintiff and defendant, having agreed upon a plan whereby plaintiff would sell to defendant the Chickasha store, caused the same to be incorporated under the name of the "Booterie 5th Store," with a capital stock of $10,000, of the par value of $100 per share. The incorporators thereof were plaintiff, defendant, and defendant's wife. Plaintiff was elected president of the corporation, the defendant treasurer, and all three incorporators were directors. Ninety-eight shares of the capital stock were issued to the defendant, one share to plaintiff, and one share to defendant's wife. All shares of stock issued to defendant and his wife were assigned in blank and delivered to plaintiff as security for the purchase price of the stock, as per written agreement entered into between plaintiff and defendant on the 9th day of May, 1923. The written agreement between the parties, in so far as pertinent to the questions presented by this appeal, is as follows:

"This agreement, made, and entered into this 9th day of May, 1923, by and between

E. LeCompte, party of the first part, and R. L. Jones, party of the second part:

"Witnesseth: That the said first party has sold to the said second party, who has bought and agreed to pay therefor to the said first party 100 shares of the capital stock of the Booterie 5th Store, represented by certificates numbered 1, 2, and 3. The agreed price for said stock is the sum of $190 per share, a total sum of $19,000, which the said second party agrees to pay to said first party as follows: $100 or more on the 1st day of June, 1923, and $100 or more on the first day of each succeeding month thereafter, until paid in full; it is further agreed by and between the parties hereto, as a part of this contract, that out of the sales of merchandise and other profits of the business, there shall be set aside a fund sufficient to pay to the said first party, eight per cent. per annum, payable semi-annually, from the time of signing of this contract on all stock held by said first party in the said Booterie 5th Store, and the same shall operate and be charged as expense of operation of the business of Booterie 5th Store; further, that net profits in excess thereof, after all expenses of whatsoever nature and kind in and to said Booterie 5th Store, shall be paid, inclusive of the aforesaid 8 per cent. on stock held by said first party, shall be set aside and accrue to a fund which shall apply on and to the further payment of the aforesaid stock sold to said second party; and shall be paid to said first party as such each month from the date hereof; and it is further agreed that the said certificates of stock hereby sold to said second party shall be issued to said second party and by the said second party assigned to said first party as collateral security to the fulfillment of this agreement by said second party; * * * in case either party shall be able, ready and willing to perform this contract on his part within the time herein mentioned, or shall heretofore have performed it, then the party who shall have performed it, if the other party shall be in default in whole or in part, may elect to declare this contract null and void, and may be entitled to demand and to receive from the other party a sum of money or its equivalent, equal to the amount of stock which may have been paid for by the said second party at the time of the said breach; time is of the essence of this contract, and in the event of any of the aforesaid payments hereinbefore mentioned, or any part thereof, become delinquent for a period of 60 days or more, this contract automatically becomes null and void, and of no effect, and subject to the agreed liquidated damages, as hereinbefore stated, at the option of the said first party, and the stock held by said first party as collateral security to the payment of the purchase price of said stock shall operate as security and be held as such for the payment of liquidated damages in the sum herein agreed."

The defendant continued to operate the store until May 20, 1926, at which time plaintiff demanded possession of the stock of merchandise, which was surrendered by defendant. Sometime prior to the last mentioned date, defendant took a renewal lease on the building occupied by the store in his individual name. When plaintiff took possession of the store, defendant served notice on him, as provided by the landlord and tenant act, to vacate. Thereupon, plaintiff brought an action to enjoin defendant from interfering with his possession of the building, and asked that defendant be decreed to hold the lease on the building in trust for plaintiff. Shortly thereafter plaintiff brought a second action against defendant, in which he alleged that defendant had been employed as manager of the Chickasha store for a period of approximately three years at a salary of $200 per month; that defendant had overdrawn his salary to the amount of $1,496.85, and asked for judgment for that amount. Defendant filed an answer in the latter cause, in which he denied that he was at the times mentioned by plaintiff employed by him in any capacity, or that he was to receive the sum of $200 per month as salary or any other sum as salary. By way of cross-petition, defendant pleaded the written contract executed by the parties on May 9, 1923, and alleged that from the date of said contract until the 20th day of May, 1926, he operated said store according to the terms of the contract, and had complied with each and every term thereof, but that plaintiff had taken possession of said store on May 20th, without his permission or consent. Defendant further pleaded that he had paid on the indebtedness, pursuant to the terms of the contract, $100 each and every month, together with 8 per cent. interest on the purchase price of the stock, and also a further sum exceeding $10,000. Defendant then asked for judgment against plaintiff in the sum of $30,000. Plaintiff filed an answer to said cross-petition, in which he, in substance, admitted the execution of the contract and the conditional sale of the stock, but alleged that defendant never complied with the terms of the contract in that he never paid any of the monthly payments nor the interest on the purchase price; and that on or about September 8, 1923, he and defendant agreed orally that said contract should be null and of no further force or effect.

After both causes were put at issue, and a request for a reference was made by defendant, the parties stipulated that the two causes might be referred to the Honorable

A. L. Herr to take the evidence on both causes at the same time, and report his findings of fact and conclusions of law to the court. The order was so made, and the causes were tried to the referee. The referee made findings of fact and conclusions of law, which were adopted in whole by the court. On the first cause of action, involving the lease to the building, a decree was rendered in favor of plaintiff and against the defendant adjudging the lease to be the property of plaintiff, from which judgment and decree no appeal has been prosecuted. In the second cause the referee found that the contract of date May 9, 1923, had not been annulled by agreement of the parties or by a breach on the part of either, prior to May 20, 1926; and that during said time defendant operated said business in conformity with the terms of said contract; and that on May 20, 1926, the business showed a net profit of $8,294.77; that of said amount defendant owed pursuant to the terms of said contract 8 per cent. interest on the sum of $19,000, or the total sum of $4,601.65, leaving a balance of $3,693.12, actually paid on the stock purchased, and for which amount judgment was duly rendered in favor of defendant and against plaintiff. Both parties filed motions for new trial, which were overruled. Plaintiff appealed from the judgment and order of the trial court, and defendant has filed a cross-petition in error.

Plaintiff sets out numerous assignments of error, but presents them under one proposition, namely:

"No payments were ever made under the terms and provisions of the written sale contract entered into by and between the plaintiff, E. LeCompte, and defendant, R. L. Jones, on May 9, 1923."

The referee found that the contract between the parties was not mutually abandoned in September, 1923, as contended by plaintiff, and his finding is amply supported by the testimony of defendant, together with many other facts and circumstances. The finding on this question is not directly attacked in this court, but is only incidentally referred to in connection with the question of payment.

The referee found that defendant had made no payments direct to plaintiff, but found that defendant had deposited in a special bank account over and above the expenses of operating the store net profits in the sum of $8,294.77, which amount, less 8 per cent. interest on the purchase price of the stock, defendant was entitled to have credited on the purchase price of the stock.

Considering this amount as payment to plaintiff, defendant complied with the terms of the contract in that the amount was sufficient to pay the 8 per cent. interest on the purchase price of the stock, together with $100 each and every month, amounting to the sum of $3,693.12, paid on the capital stock purchased by defendant, and for which he would be entitled to judgment.

The evidence is undisputed to the effect that, from on or about May 9, 1923, to May 20, 1926, two bank accounts were maintained by defendant in the Farmers' National Bank of Chickasha with the knowledge and consent of plaintiff. The main account was carried in the name of "the Booterie," and another account was carried in the name of "the Booterie, Inc." The first-mentioned account will herein be referred to as the main account, and the latter as the petty cash account. The undisputed evidence is to the effect that only enough money was deposited in the petty cash account to take care of the running expenses of the store, exclusive of bills for merchandise bought. There is some dispute as to how the deposits were made in the petty cash account for the first two or three months, but it is agreed that thereafter defendant would occasionally deposit a day's sales in that account sufficient to maintain the necessary balance with which to pay the running expenses of the store. The balance of receipts from sales was deposited in the main account. Defendant alone had authority to check on the petty cash account, and plaintiff alone had authority to check on the main account. Defendant made daily and monthly reports of sales and cash to plaintiff at Oklahoma City. Defendant paid out of the petty cash account such money as he needed personally ranging from $200 to approximately $350 per month, and such other items as advertising, water, lights and rent. Beginning with May 9, 1923, defendant purchased the merchandise for the store, but this plan was changed in September, 1923, from which date plaintiff purchased practically all of the merchandise for the store. Some of the purchases seemed to have been made jointly by plaintiff and defendant, and a few small items were purchased by defendant. The evidence shows that plaintiff had authority to draw checks on the main bank account for any purpose he desired. He paid all bills for merchandise and drew several checks payable to himself. However, there is evidence to the effect that the checks drawn by plaintiff to himself were in payment of money advanced by him; and that he never actually appro-

priated any of the funds deposited in the bank account to his individual use. The question is, Did the deposit of net profits in the amount found to have been earned, along with the money necessary to pay the merchandise bills in the main bank account, under the evidence, constitute payment of the sums required to be paid under the contract?

Payment has been defined by courts and text-writers in its restricted sense to mean the discharge in money of a sum due. Tuttle v. Armstead, 53 Conn. 175, 22 Atl. 677; Bouvier's Law Dictionary, p. 2540. However, in its more general acceptation, it means the fulfilling of an obligation, and may consist in doing as well as giving. What constitutes payment depends upon the terms of the contract which give rise to the obligation to be performed. It has been repeatedly held that the depositing of money due a creditor in a bank, or with a third person for the creditor, in the absence of knowledge and consent on the part of the creditor, or in the absence of an acceptance of money so deposited, does not constitute payment. However, payment may be made in any manner agreed upon by the parties; or, when made in any manner and accepted as such by the creditor, it will constitute payment. One provision of the contract is that all net profits from the business after all expenses of whatsoever nature, including the 8 per cent. interest on the stock purchased, shall have been paid, shall be set aside and accrue to a fund which shall apply on and to the further payment of the aforesaid stock. From a consideration of all the provisions of the contract, it appears that defendant obligated himself to pay on the stock purchased by him all net profits made from the business. $100 per month, together with 8 per cent. interest on the stock purchased, was required to be paid in order to comply with the contract, regardless of whether he made any profits from the business or not. These payments were the minimum requirements under the contract. But all net profits from the business were also required to be paid to plaintiff. The written contract does not specify that the $100 monthly payments, or the interest, or other net profits, be paid in any particular manner, or does the contract require that each of these amounts be deposited in separate accounts. It would seem that these details might be handled according to the mutual convenience of the parties. As to whether defendant made the payments as required by the contract, he testified as follows:

"Q. Did you pay that to Mr. LeCompte, did you or did you not; let him answer it 'yes' or 'no.' I am asking him if he paid it. You can answer and then make your explanation? A. I paid it in the fund in the parent account. That is the way it was supposed to have been paid, and that was the understanding. Q. Does the contract provide that it was to be paid by putting funds into the parent account? Does the contract provide that you should pay it by paying into the parent fund? A. We know that is the way we had it arranged."

In addition to this evidence, the record is undisputed that, when defendant deposited money in the main account, he released all dominion over it, and it was subject to the exclusive check of plaintiff. Plaintiff received statements and reports both daily and monthly as to what the business was doing. He knew from the reports at least once a month how much money was being deposited in the main account, and how much of it was necessary to pay for merchandise, and how much could apply on the purchase price of stock and on the interest on the purchase price. The fact that this account was carried in the name of "the Booterie" means nothing. The money would not have been any more under the control and dominion of plaintiff had it been placed in his personal account. The record discloses that plaintiff knew no limitations or restraints on his right to check the money out, except that he was required to pay merchandise bills. A number of checks were issued by plaintiff to himself without defendant having any knowledge of the transaction. Under the evidence, we are of the opinion that defendant deposited the money in the main account with the consent of plaintiff, if not in compliance with plaintiff's requirements; that by agreement this was the plan of payment under the written contract; that plaintiff had full right and authority to appropriate to his individual use all profits deposited in said bank account; and the reinvestment of said profits in building up the stock of merchandise in said store by plaintiff did not defeat defendant's right to have the profits credited on the purchase price of the corporate stock bought; and that by the terms of the contract defendant is entitled to recover that amount.

Defendant, by his cross-petition in error, presents two objections to the judgment of the trial court. It is first contended that the referee and court erred in deducting from the profits earned by the Chickasha store the item of $930, charged by plaintiff for bookkeeping expenses. The record shows

that about five items charged against the store on the books of plaintiff were disputed by defendant. One of them includes the item of $930, which was paid by plaintiff to his bookkeeper in Oklahoma City for keeping the set of books for the Chickasha store during the period involved in this suit. The record does not disclose exactly what sort of accounts were kept by defendant at Chickasha, but it does show that no complete set of books, which would have been required for the business, were kept by him. Plaintiff's evidence was to the effect that his regular bookkeeper at the Oklahoma City store kept a separate and complete set of books for the Chickasha store, and that plaintiff paid the bookkeeper $10 per week on the account of the Chickasha store, and in turn reimbursed himself out of the main bank account at Chickasha. Defendant testified that he did not agree to pay any bookkeeper's salary in Oklahoma City, and that he did not know that plaintiff was in fact charging him with this item. The evidence is undisputed that defendant did not keep a complete set of books; that plaintiff's bookkeeper did keep a complete system of books; that defendant made certain reports to plaintiff daily and others monthly; that defendant did not keep a profit and loss account; that he knew that plaintiff was keeping such an account at Oklahoma City. The written contract under which defendant was operating the Chickasha store provided that all expenses of whatsoever nature and kind in and to the Chickasha store should be paid and deducted before the net profits should be computed. We think the evidence and circumstances are overwhelming that the books at Oklahoma City were kept with the knowledge of defendant; that he, to a certain extent, relied and depended upon the books and records kept for him at Oklahoma City; and that the expense charged for the keeping of said books is a reasonable and legitimate expense, which should have been charged against the Chickasha store.

It is next contended by defendant that the court erred in dividing the costs equally between the parties. As heretofore stated, there were two causes tried at one and the same time by the referee. The first was an action for injunctive relief and to establish a trust. The second was ultimately an action in accounting. The first action was decided in favor of plaintiff and against the defendant. and in the second a decree was entered in favor of defendant for much less amount than claimed by him. Defendant says that the first action did not involve the examination of mutual accounts, such as was in-

volved in the latter, and that the cost incurred in the first was very small as compared with that in the latter. From an examination of the record, it appears that if the two actions had been tried separately, the costs in the latter action would have been considerably greater than that in the first action. However, both actions were tried as equity cases. Section 773, C. O. S. 1921, has been construed to confer discretionary power upon the court in taxing costs in such cases as it may think right and equitable. Only where the trial court has manifestly abused its discretion in so doing, will this court disturb the action of the trial court on appeal. Morris et al. v. Gray, 37 Okla. 695, 132 Pac. 1094. In the case of Walker v. Walker, 17 Okla. 467, 88 Pac. 1127, it was held:

"In an action for an accounting, the statute confers discretionary power on the court to apportion the cost as it may think right and equitable."

From an examination of the record, we are of the opinion that the trial court did not abuse its discretion in this regard, and that the decree in this particular should not here be disturbed.

We find no reversible error in the record, and the judgment and decree of the trial court is affirmed.

BENNETT, DIFFENDAFFER, HALL, and LEACH, Commissioners, concur.

By the Court: It is so ordered.