**R. O. WHEELER, d/b/a R. O. Wheeler Construction Company, Plaintiff in Error,**

**v.**

**BENSON–TAYLOR, INC., a Corporation, Defendant in Error.**

**No. 40453.**

Supreme Court of Oklahoma.

July 21, 1964.

Wheeler & Wheeler, Tulsa, for plaintiff in error.

Sam P. Daniel, Jr., Lupardus, Holliman & Huffman, Tulsa, for defendant in error.

WILLIAMS, Justice.

The action from which this appeal arises was initiated by Benson-Taylor, Inc., a corporation, defendant in error and cross-petitioner, hereinafter referred to as Benson-Taylor, against plaintiff in error, R. O. Wheeler, d/b/a R. O. Wheeler Construction Company, hereinafter referred to as Wheeler, for an accounting.

In its petition Benson-Taylor alleged that on or about May 18, 1960, it entered into an oral agreement with its president, Wheeler, under the terms of which he was to construct, complete, furnish and equip a motel; that the actual cost thereof was to be paid by Benson-Taylor; that the consideration to Wheeler was the issuance to him by Benson-Taylor of 235 shares of its common stock; that at the time of the negotiations between the parties for the contract, Wheeler stated that the total cost would approximate $190,000.00; that thereafter Wheeler advised that said cost would be approximately $206,000.00, which amount was orally approved by Benson-Taylor; that on March 17, 1961, at a meeting of stockholders of Benson-Taylor, Wheeler advised that an additional sum of approximately $61,000.00 in excess of the $230,500.-00 by that time advanced by Benson-Taylor to Wheeler, was needed to pay debts incurred for said construction; that such figures were substantiated by a report and audit as of March 8, 1961, presented at that meeting by Daniel, Daniel, Ennis & Co., engaged by Wheeler; that subsequent to said report and audit it was discovered that approximately $22,000.00 additional money was needed to discharge accounts incurred in said construction; that the above stated additional money was paid by Benson-Taylor to various creditors of Wheeler, whom he claimed he owed as a result of the motel's construction, to prevent liens from being filed and to enable the motel to open for business.

Benson-Taylor further alleged that it had paid the total sum of approximately $313,-000.00, to Wheeler and others for his account as the alleged construction costs of said motel; that under their agreement Wheeler was obligated to Benson-Taylor to account for monies advanced or caused to be advanced by it; that it is informed and believes that all of the monies paid to Wheeler and others for his account did not and could not all have been expended in the construction of the motel; that a portion of said materials, work, labor, services, furnishings and fixtures for which Benson-Taylor paid Wheeler and others for his

account was applied to and expended elsewhere than on said motel; that all of the records relative to the construction of said motel were in the exclusive possession and control of Wheeler; that Wheeler had failed, neglected and refused to account to Benson-Taylor for the above mentioned monies and upon demand refused to allow Benson-Taylor to inspect all such records; that the transactions involving the construction of the motel are so numerous and complicated that such cannot be ascertained without an accounting.

Wheeler answered by means of a general and specific denial and alleged that he had expended $2,630.71, more in the construction of the motel than he was advanced by Benson-Taylor. Wheeler filed a cross-petition alleging that he was entitled to be reimbursed by Benson-Taylor for certain truck rental, travel expenses, supervision fee and other unreimbursed costs incurred by him in the construction of the motel.

In reply to said cross-petition Benson-Taylor set up as a bar to such alleged unreimbursed expenses a written agreement entered into between the parties on March 17, 1961.

After an extensive trial the court below found that "the defendant [Wheeler] has accounted in open Court for all moneys advanced to him and through plaintiff [Benson-Taylor] and all charged by him to plaintiff except the sum of $76.91, which sum the Court finds was not a proper charge, by the defendant to the plaintiff and the Court further finds that as a result of said accounting that defendant is not indebted to plaintiff, but that plaintiff is indebted to defendant in the amount of $686.53". Judgment was entered for Wheeler on the petition of Benson-Taylor. On Wheeler's cross-petition the trial court entered judgment for him against Benson-Taylor in the amount of $686.33. Both Wheeler and Benson-Taylor appeal from the overruling of their motions for new trial.

For reversal Wheeler advances only one proposition. It is that "The Court erred, when having opened the case for an accounting, he refused to allow all items of the mutual account due to the defendant [Wheeler]". Under such proposition Wheeler contends that "the compromise contract was treated as being invalid, abandoned and rescinded by the plaintiff [Benson-Taylor] and for that reason, together with the Court's order and requirement for an accounting, the contract was rendered a nullity and rescinded upon the testimony of the first witness. This being true, as reflected by the transcript, and defendant [Wheeler] having been required to defend the suit and render a full and complete accounting, the contract was abandoned and rescinded and was no longer effective and defendant is entitled to be reimbursed for all construction costs proved at the trial". We find no merit in such contention.

In pertinent part such contract provides:

"R. O. Wheeler agrees to return and pay unto Benson-Taylor, Inc., the sum of $6537.00, being salary, withdrawals and expenses incurred by him, in consideration of which Benson-Taylor, Inc., and each of its stockholders, agree to accept the building and/or buildings constructed by R. O. Wheeler and/or R. O. Wheeler Construction Company at the actual cost thereof, as more particularly shown in the audit of Daniel, Daniel, Ennis & Company, including accounts payable, dated March 8, 1961.

"II

"In consideration of such payment, Benson-Taylor, Inc., and each of the stockholders, hereby relinquish, release and forever quit-claim any and all claims of every nature that the said Benson-Taylor, Inc., and each of the stockholders thereof, have or might have by reason of the fact that the estimated cost of the project was exceeded by the actual cost.

"III

"R. O. Wheeler agrees that he will repay unto Benson-Taylor, Inc., any and all sums of money established by an audit of a certified public accountant to have been paid to him or to R. O. Wheeler Construction Company and not expended in the construction of the Darby Lane Downtown Motor Hotel."

In the case of National Bank of Commerce v. State ex rel. Garrison, Okl., 368 P.2d 997, 1002, we said:

"It is settled law in this jurisdiction that where the amount of a claim is in good faith disputed and the interested parties agree upon a compromise, the settlement so made constitutes a bar to any further recovery on the claim. See Jarecki Mfg. Co. v. Cimarron River Oil & Gas Co., 69 Okl. 104, 170 P. 252; L. C. Jones Trucking Company, Inc. v. Jenkins, Okla., 313 P.2d 530, and cited cases."

The trial court took the position that the parties had settled everything by their contract except that Wheeler would reimburse Benson-Taylor for the monies that did not actually go into the construction of the motel.

■ By the execution of the contract the parties apparently intended to settle all their differences except the one concerning whether or not Wheeler owed Benson-Taylor any money for sums advanced to him, but not expended in the construction of the motel. By such action Benson-Taylor sought to determine whether or not all sums of money paid to Wheeler or for his account were expended in the construction of the motel. The trial court sought to and did resolve this dispute by having an accounting rendered in the process of the trial. We find that the action of Benson-Taylor in initiating the matter in the trial court did not constitute a rescission or abandonment of the contract.

As has been noted above, Benson-Taylor also appealed. In urging reversal of the trial court's judgment, such defendant in

error advances four propositions. We are considering the first two propositions together. They are as follows:

"The remedy on accounting, with attendant and dependent relief by discovery, when invoked by a principal against his agent, is available to the principal upon proof of existence of a fiduciary relationship between the principal and agent, the existence of a mutual account between the parties or the presence of a complication which would appear to render an ordinary trial at law of doubtful adequacy to accomplish a complete adjustment of the rights of the parties."

"In an action for accounting the hearing is confined to the plaintiff's right to an accounting and the defendant's liability to account and it is error for the court to inquire at that time into the items of account without affording plaintiff proper time for inspection of the books and papers relating thereto."

■ Benson-Taylor contends that "There is no question but that the plaintiff [Benson-Taylor] plead and proved those facts which in law entitled it to an accounting. Remaining is the question of whether the court erred in inquiring into the state of the accounts between the parties without first entering its interlocutory decree for an accounting and permitting the plaintiff the opportunity to inspect all of the books and records of the defendant [Wheeler] covering the time during which he was engaged in the construction of plaintiff's motel." We find no error in the refusal of the trial court to enter an interlocutory decree. We find that a complete accounting was had.

In the case of State ex rel. Smith v. District Court of Osage County, 188 Okl. 663, 112 P.2d 381, 383, we said:

"Often in such a case the trial court refers the accounting matter to a master or referee. * * *

*      *      *      *      *      *

"Of course the trial court in such a case is not required to refer the matter to a master or referee. The trial court may fully try the case and dispose of all matters of accounting itself. * * *"

■ In the second paragraph of the syllabus in the case of Dowell v. Dowell, Okl., 316 P.2d 850, we held:

"Where an action for accounting has been brought in a court of general equitable jurisdiction, it is the duty of such court, when it finds that an accounting is proper, to conduct the same and to try all of the issues involved and to administer full relief to the parties."

Benson-Taylor contends that it raised the questions of fraud or misfeasance and therefore the trial court was required to make deeper inquiry than standard accounting procedures. We do not agree.

■ Benson-Taylor waived any question of fraud or misfeasance by its execution of the agreement of March 17, 1961. As hereinabove set forth, said agreement stated that Benson-Taylor and its stockholders "hereby relinquish, release and forever quit-claim any and all claims of every nature * * * [they] have or might have by reason of the fact that the estimated cost of the project was exceeded by the actual cost."

The accountant for Benson-Taylor testified that in the fall of 1961, prior to the trial in June and July of 1962, that he "received photostatic copies of invoices, delivery tickets, cancelled checks and a few letters of quotations from sub-contractors, that sort of thing" relating to construction costs of the motel; that he received from the accountants who prepared the audit of March 8, 1961, and financial statement of March 31 1961, "their work papers which were handed to us as being the books and records that were prepared relative to the construction of the" motel; that except as to labor he was satisfied with the figure $3,178.00, expended by Wheeler in excess of that received by him.

The third proposition of Benson-Taylor is that "The judgment of the trial court is clearly against the weight of the evidence". Benson-Taylor contends that its "accountant uncovered invoices from suppliers for materials which did not go into the motel totaling $2180.59." Concerning the Murray-Womble account, such accountant testified that invoices for materials totaling $927.77, indicated that those materials went elsewhere than to the motel; that $927.77 should "be subtracted from the amount showing a credit balance to R. O. Wheeler in the March 31st financial statement." In connection with five other suppliers this accountant similarly testified except in each instance the amounts of money involved varied. Upon cross examination this witness testified as follows:

"Q: Mr. York, again on this item, we took all of the invoices that showed a delivery at 7th and Frisco or Darby Lane?

"A: (Nodding yes.)

"Q: We determined therefrom the amount chargeable to the job?

"A: (Nodding yes).

"Q: We determined the amount paid by the corporation?

"A: Uh-huh.

"Q: When the thing was closed and we got a credit for R. O. Wheeler which was somewhat less than the checks he had written that organization; is that right?

"A: Whatever the deposition shows, this was the method.

"Q: That was what happened, wasn't it?

"A: This was the method.

"Q: And that credit figure went into the total that was computed for the total credit of his expenditures?

"A: Yes."

Such accountant similarly testified as to the accounts of the other five suppliers.

Benson-Taylor argues that the $1500.00 Wheeler received from the sale of salvage

from the motel site should have been credited to it. Wheeler's testimony was that itinerant workers were paid $1515.46 for clearing the motel site; that "by and large, most of the disbursements were made by cash. The cash was drawn in each instance from my bank account on a cash check".

▮ Benson-Taylor further argues that "The $388.00 for the major repair to defendant's [Wheeler] truck incurred at the inception of construction and while in service other than at the job, as well as $830.00 for secretarial services are clearly not properly attributable to the job * * " Wheeler's uncontradicted testimony was that it was necessary to have a truck for use in connection with the construction of the motel. He asked $1250.00 for ten months truck rental which the trial court did not allow him. In lieu of rental it would seem that the trial court allowed him to charge to the cost of construction the repair of the truck. As to the $830.00 for "secretarial services", the testimony was that such person did the payroll work and other normal office functions for seven months in connection with construction of the motel.

We find that the judgment of the trial court concerning these items is not clearly against the weight of the evidence.

In the second and third paragraphs of the syllabus in the case of Hitt v. Hitt, Okl., 258 P.2d 599, we held:

"In cases of equitable cognizance, such as an action for declaration of a trust, this court will examine and weigh the evidence, but will not disturb the trial court's findings and judgment unless it appears that they are against the clear weight of the evidence.

"It is for the trial court in equity matters to determine the credibility of the witnesses and the weight and value to be given to their testimony. The conclusion there reached upon these points will not be disturbed on appeal, unless appearing to be against the clear weight of the evidence."

The last proposition of Benson-Taylor is that "The trial court abused its discretion in awarding the defendant [Wheeler] his costs in an accounting action brought about by the failure of the defendant to properly account."

▮ The financial statement of March 31, 1961, which Benson-Taylor ordered after reviewing the audit of March 8, 1961, showed a balance owing to Wheeler in the amount of $763.44. As a result of the accounting had in the trial court, Benson-Taylor was able to reduce this sum by only $76.96, money paid to laborers.

In the case of Midland Savings & Loan Co., v. Carpenter, 170 Okl. 539, 40 P.2d 1052, 1054, 1055, we said:

"This action was commenced as one to quiet title, and was of purely equitable cognizance. * * * Since no other statute provides for the taxing of costs in such an action, section 521 applies [12 O.S.1961 § 930]. The action of the court in taxing costs under said section will not be disturbed on appeal, unless it clearly appears that the court has abused its discretion. Le Compte v. Jones, 136 Okl. 1, 275 P. 634. In taxing the costs in this case, the court must be governed by principles of equity, and the discretion must not be so exercised as to result in injustice or oppression. 15 C.J. 34."

When we consider the entire record of this case we are unable to find that the trial court abused its discretion in taxing the costs against Benson-Taylor.

Affirmed.

HALLEY, V. C. J., and DAVISON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, C. J., and JOHNSON, J., concur in result.

BERRY, J., dissents.