**Arpe Dee (Jack) SINIARD and Thelma L. Siniard, husband and wife, Appellants and Cross-Appellees,**

v.

**Paul G. DAVIS and Carrie Evelyn Davis, husband and wife, and George Lee Spradlin and Virginia N. Spradlin, husband and wife, Appellees and Cross-Appellants.**

Nos. 59817, 59818.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 28, 1984.

Released for Publication by Order of Court of Appeals March 30, 1984.

Garrett & Salter by James P. Garrett, Mangum, for appellants.

Wesner, Wesner & Rainbolt by Charles P. Rainbolt, Cordell, for appellees.

ROBINSON, Judge:

Thelma L. Siniard [Appellant] is the owner of 5.714 undivided mineral acres under the S½ of the SW¼ of Section 22 and an undivided mineral interest in the S½ of the SE¼ Section 21, Township 10N, Range 20W, Washita County, Oklahoma. On July 27, 1973, the Oklahoma Corporation Commission established one 1440 acre spacing unit covering Appellant's mineral interest in the S½ of the SE¼ of Section 21 and another 1440 acre spacing unit covering the S½ of Section 22. On October 14, 1974, Appellant executed an oil and gas lease covering both of the above described tracts to J. Cooper West [J. Cooper West lease] for a primary term of three years from May 20, 1976. In absence of drilling operations or production, this lease would have expired on May 20, 1979. Prior to April 10, 1979, El Paso Natural Gas Company, assignee of the J. Cooper West lease, commenced a well in the S½ of the SE¼ of Section 21, which became known as the Kilhoffer #1 well.

During March, 1979, Appellant and Appellee Paul Davis [Davis] were together at the Kilhoffer #1 well site and Appellant expressed her desire that she would like to lease minerals in the S½ of the SW¼ of Section 22 before a well was staked in that section or in the 1440 acre spacing unit. Appellee Davis responded that he would be interested in leasing her minerals in Section 22. At that time, there were no drilling operations in progress on Section 22 nor in the spacing unit which contained said section. On April 10, 1979, Appellant executed two oil and gas leases, one to Davis and one to Appellee George Lee Spradlin [Spradlin], with a primary term beginning May 20, 1979, covering only the S½ of the

SW¼ of Section 22, with each lease being for one/half of Appellant's undivided mineral interests in said tract of land. Appellant received a total of $28,594.00 ($14,-297.00 from Davis and $14,297.00 from Spradlin) as payment of the agreed bonus consideration and prepaid delay rentals under the described leases.

Subsequently, on or about September 8, 1980, Appellees were advised by El Paso Natural Gas Company that their leases from Appellant did not become effective on May 20, 1979, because Appellants' October 14, 1974 lease to J. Cooper West was perpetuated by production from the Kilhoffer # 1 well beginning March 31, 1979. Even though Section 22 is not included in the 1440 acre spacing unit wherein the Kilhoffer # 1 well is located, Section 22 is held by the production from the Kilhoffer # 1 unit well because Section 22 is still subject to the aforementioned J. Cooper West lease.

Appellees then commenced separate identical law suits against Appellants alleging that Appellants had breached the warranty of title contained in the April 10, 1979 leases and seeking refund of the bonus and prepaid delay rentals, together with interest, costs and attorney's fees. The trial court granted summary judgment in favor of Appellees for $14,297.00 each, plus costs and denied interest and attorney's fees. From these two judgments, Appellants appeal and Appellees cross-appeal as to the denial of interest and attorney's fees. The two cases were consolidated on appeal.

## I.

Appellants assert that recovery under a warranty of title theory should not apply to a top lease. A top lease is one taken by a lessee from a lessor who has previously given a lease in the same interest to another, which previous lease had not expired at the time the top lease was taken. *Stoltz, Wagner & Brown v. Duncan*, 417 F.Supp. 552 (W.D.Okl.1976). The oil and gas leases executed by Appellants as lessors to Appellees as lessees provides in part as follows:

Lessor hereby warrants and agrees to defend the title of the land herein described ...

▬ A covenant of general warranty in a lease includes an obligation that the covenantor is seized in fee with the right to convey and if these covenants are broken, they are broken when made; eviction is unnecessary to consummate the breach. *Walker & Withrow, Inc. v. Haley*, 653 P.2d 191 (Okl.1982). By showing the existence of a producing well within part of the leased premises under the J. Cooper West Lease, with production from said well satisfying the habendum clause and the drilling clause for the entire lease sufficient to extend the term of the lease beyond its initial period, Appellee effectively showed the Appellant breached the warranty in the two April 10, 1979 leases executed by Appellants to Appellees. In an action for damages for breach of warranty, the lessee is entitled to recover such consideration that he has paid to the lessor, including the bonus payment and delay rental. 4E. Kuntz, *Oil & Gas* § 252, (1972), p. 306; *Oklahoma City v. Harper*, 198 Okl. 493, 180 P.2d 162 (1947). Recovery on the covenant of warranty will not be prevented by the fact that the lessor and lessee, or both of them, knew that the lessor had no title. Kuntz, *supra*.

In the instant case, Appellants attempted to distinguish the cases of *Oklahoma City v. Harper*, *supra*, and *Walker & Withrow, Inc. v. Haley*, *supra*, because they assert the present case involves a "top lease". They claim that a top lease by its very definition is a speculative venture and cannot be guaranteed and therefore should be at the lessee's risk. To support this proposition, they cite the case of *Stoltz, Wagner & Brown v. Duncan*, *supra*. The *Stoltz* case, however, is distinguishable as it involved a quiet title suit by the holders of the top lease against the lessee operator of a prior lease alleging nondiligence as a prudent operator. That suit did not involve a breach of warranty by the lessors nor is there any discussion concerning a warranty clause in a top lease.

In *Oklahoma City v. Harper, supra,* Oklahoma City sold Harper an oil and gas lease on Draper Park. It was later determined that the City did not own the minerals nor the fee but only owned an easement to the lands involved. Harper sued to recover the bonus money paid to Oklahoma City and prevailed.

In *Walker & Withrow, Inc. v. Haley, supra,* shortly after Haley had granted an oil and gas lease, it was discovered that the leased premises were held by production within a spacing unit under a prior lease. Appellee sued for breach of warranty of title and prevailed in the trial court. The Supreme Court stated that Appellee had shown the existence of a producing well within a spacing unit which sufficiently extended the term of the prior lease beyond its initial period and therefore Appellee effectively showed that Appellant breached his warranty in the subsequent lease covering the same premises.

■ Appellants argue that the proper construction to be placed on a general warranty of title clause in a top lease is that the lessor warrants he owns the minerals and has the authority to convey right of entry, exploration, production, and possession subject only to the right, if any, of a prior unreleased lease of record. We believe that if Appellants desired this result they could have easily inserted in the top lease the above stated language or could have stricken the warranty clause in said top lease in the same manner they struck the clause concerning crop damages. We think the cases of *Walker & Withrow, Inc. v. Haley, supra, Oklahoma City v. Harper, supra,* and Kuntz, *Oil and Gas, supra,* are controlling in the present case and the covenant of warranty contained in the top lease must be given its plain effect and intent since the warranty clause and the oil and gas lease do not contain any limitations, exceptions or qualifications. *Cutright v. Richey,* 208 Okl. 413, 257 P.2d 286 (1953).

■ Appellants claim that in the event the Kilhoffer # 1 well, which continues the J. Cooper West lease in force, should fail to produce in paying quantities during the primary term of Appellees' top lease, the rights granted under Appellants' top lease would be in full force and effect. We note that at the time of the trial court's judgment, the primary term on Appellees' top leases had already expired, and pursuant to *Stoltz, supra,* cited by Appellants, commencing Appellees' primary term after the expiration of the October 14, 1974 J. Cooper West lease would violate the rule against perpetuity (i.e. within the perpetuity period of some life in being and 21 years thereafter).

## II.

■ For their second proposition of error, Appellants contend that the provisions of 52 O.S.1981 § 87.1(b) should under the facts of this case be applied retrospectively. Section 87.1(b) provides:

> (b) In case of a spacing unit of one hundred and sixty (160) acres or more, no oil and/or gas leasehold interest outside the spacing unit involved may be held by production from the spacing unit more than ninety (90) days beyond expiration of the primary term of the lease.

This provision is commonly called the statutory Pugh clause and resembles a part of the original Pugh clause that was occasionally included in an oil and gas lease. Prior to § 87.1(b), a Pugh clause in a lease often provided that drilling in a unit formed by the exercise of the pooling power would not satisfy the drilling clause of the lease as to the acreage outside of the unit, and that production from such a unit will not satisfy the habendum clause as to acreage outside of the unit. Section 87.1(b) has the purpose of preventing production from a unit from satisfying the habendum clause of any lease for more than ninety days beyond the expiration of the primary term as to acreage outside of the unit when a part of the leased premises is included in a unit of 160 acres or more. Prior to the enactment of the statutory Pugh clause or in the absence of a Pugh clause in an oil and gas lease, when a part of the leased premises was included in a drilling unit, production from

the unit satisfied the habendum clause of the lease as to the part of the leased premises included in the unit and also as to the part of the leased premises outside of the unit. *Whitaker v. Texaco, Inc.,* 283 F.2d 169 (10th Cir.1960); 4 E. Kuntz, *Oil and Gas* § 48.4 (1972); Kuntz, *Statutory Well Spacing and Drilling Units,* 31 Okla.U.L. Rev. 344 (1978).

In the present case, part of the original J. Cooper West leased premises is included in a 1440 acre spacing unit held by production from the Kilhoffer # 1 well, and another part of the original leased premises (the land top-leased to Appellees) is outside of that spacing unit and included within a separate 1440 acre unit without any producing well thereon.

The Supreme Court in *Wickham v. Gulf Oil Corp.,* 623 P.2d 613 (Okl.1981), held that § 87.1(b), which became effective May 25, 1977, was not applicable retrospectively and therefore did not apply to oil and gas leases already existing at the time the statute became effective. The original J. Cooper West lease was executed on October 14, 1974, prior to the effective date of the statute.

Appellants argue, however, that the Kilhoffer # 1 well was drilled two years after the passage of § 87.1(b) and thus, equity and fairness under the facts and circumstances of the present case would warrant that § 87.1(b) be applied retrospectively. We do not agree and hold that to apply 87.1(b) to the original J. Cooper West lease would impair the lease contract and prejudicially affect rights which vested upon execution of the contract. *Wickham v. Gulf Oil Corp., supra.*

### III.

■ Appellees, on their cross-appeal assert that the trial court erred in not awarding attorney's fees and pre-judgment interest. Appellees base their claim for interest and attorney's fees on 16 O.S.1981 § 24, which provides:

Where any grantor appears in any action to defend his warranty or fails to appear after due notice, the court shall determine all the rights of all the parties, and in case the recovery is adverse to the warrantee, the warrantee shall recover of the warrantor the price of the land paid for the conveyance at the time of the warranty, the value of all improvements lost, if any, and all sums necessarily expended, including a reasonable attorney fee, and interest at the rate of 10% per annum on all sums so paid from the time of payment.

Section 24 applies where an action has been brought against a grantee to recover realty or a part thereof by some third person, and the grantee notifies the grantor to defend his warranty, or having so notified the grantor, the grantee brings a separate action against him. Section 23 O.S.1981 § 25 applies in actions such as the present case by the grantee against the grantor, where no action by a third person has been filed against the grantee. *McConnell v. Goucher,* 108 P.2d 174 (Okl.1940). Section 23 O.S.1981 § 25 provides:

The detriment caused by the breach of a covenant of seizin, of right to convey, of warranty, or of quiet enjoyment, in a grant of an estate in real property, is deemed to be:

1. The price paid to the grantor, or, if the breach is partial only, such purportion of the price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property;

2. Interest thereon for the time during which the . grantee derived no benefit from the property, not exceeding six years; and

3. Any expenses properly incurred by the covenantee in defending his possession.

We agree, however, with the trial court that under the facts of this case, attorney's fees and interest are not warranted. *See Walker & Withrow, Inc. v. Haley, supra.*

For reasons stated above the trial court's order granting summary judgment in favor of Appellees is hereby affirmed.

AFFIRMED.

YOUNG, P.J., and REYNOLDS, J., concur.