**Wanda DOTSON, Personal Representative of Alfred Roberts, deceased and Wanda Dotson, Personal Representative of Mary Roberts a/k/a Mary Hoover Roberts, deceased, formerly guardian of Mary Roberts a/k/a Mary Hoover Roberts, an incompetent person, Appellant,**

v.

**David RAINBOLT, formerly John Doe and United Community Corporation, a corporation and its successor Bancfirst Corporation, a corporation, formerly John Doe, Inc., Appellees.**

No. 80461.

Supreme Court of Oklahoma.

April 18, 1995.

Harvey L. Chaffin, Tahlequah and Harry Scoufos, Sallisaw, for appellant.

Karen L. Howick, Oklahoma City, for appellees.

WATT, Justice.

Appellant, Wanda Dotson, appealed from the trial court's order granting Appellees', David Rainbolt and Bancfirst Corporation, motion to dismiss Dotson's petition. Dotson, is the personal representative of Alfred Roberts, and Mary Roberts. Alfred Roberts was Dotson's father; Mary Roberts was Alfred Roberts's wife, and Dotson's step-mother.

## FACTS

In 1985 Alfred Roberts was a director and shareholder of Liberty State Bank of Tahlequah, Oklahoma. Alfred Roberts's wife, Mary Roberts, also owned shares in Liberty State Bank, but was an invalid so Alfred Roberts handled her financial affairs. Alfred Roberts had been a Liberty State Bank shareholder and director since the 1960s. In 1985, Alfred Roberts and his wife were two of only thirteen shareholders in Liberty State Bank.

In 1981 H.E. Rainbolt acquired a majority of Liberty State Bank's stock. He later sold much of his stock to other investors. In late 1984 Liberty State Bank's stockholders formed a Holding Company called Liberty State Bancshares, Inc. On May 9, 1985, Alfred Roberts exchanged his Liberty State Bank stock for stock in Bancshares. It is this exchange that gave rise to the lawsuit underlying this appeal. In 1985, David Rainbolt had allegedly "put the hard sell" on Alfred Roberts and represented to him that the dividends on Bancshares' preferred stock were "guaranteed and no risk."

United Community Corporation was to be a holding company for several Rainbolt banks.[1] Prior to the exchange of Liberty State Bank stock for Bancshares stock, H.E. Rainbolt represented to Roberts and the other investors that Bancshares would become a part of United. United was made the holding company for seven of H.E. Rainbolt's banks in 1985, but Liberty State Bancshares was not among them.

William P. Willis, Jr., and Veraman T. Davis, were shareholders and directors of Liberty State Bank. As had Alfred Roberts, Willis and Davis exchanged their Liberty State Bank stock for Liberty State Bancshares stock on May 9, 1985.

Roberts held preferred stock in Bancshares. Consequently, his dividends were guaranteed. Bancshares was to pay Roberts's guaranteed dividends semiannually, on June 30 and December 31. Bancshares apparently made its last preferred dividend payment to Roberts on July 25, 1986. This payment was seventy percent short of the amount Bancshares owed Roberts, as Bancshares paid only 1.5% of the 5% owed. There is no indication in the record that Bancshares paid Roberts any dividends after July 25, 1986. Nevertheless, Alfred Roberts continued to actively participate in Bancshares' shareholders' meetings, and as a board member, through the annual shareholders' meeting held April 12, 1988, shortly before Roberts's death. Roberts died on May 31, 1988.

Alfred Roberts attended the annual shareholders' meeting of Liberty State Bancshares, Inc. on May 5, 1987. According to the minutes of that meeting, H.E. Rainbolt told the shareholders that unless substantial additional money was put into Bancshares, *"it is probably not going to be a viable entity."* [Emphasis added.] The minutes of the May 5, 1987 meeting also state that David Rainbolt told the board that the MBank note had come due in November 1986, and whether MBank decided to sue on the note "will dictate what will happen to the Holding Company [Bancshares]."

On January 9, 1987 MBank had sued Davis & Willis in federal court in Texas on Bancshares' notes they had guaranteed, and to foreclose on their Bancshares stock. Shortly thereafter, on January 21, 1987, Davis and Willis had sued H.E. Rainbolt and other defendants in Case No. 87–45 in the District Court of Cherokee County, Oklahoma. Neither David Rainbolt nor Bancfirst Corporation was a party to Case No. 87–45. Davis testified that in late January or early February 1987 he told Roberts that H.E. Rainbolt was scheming to avoid paying Roberts his preferred dividends.

## PROCEDURAL HISTORY

Dotson filed the case at bar on November 30, 1988 on behalf of her father, Alfred Roberts, and her step-mother Mary Roberts, but joined neither David Rainbolt nor Bancfirst Corporation as a defendant at that time. Dotson sued H.E. Rainbolt, Liberty State Bank, Liberty State Bancshares, John Doe, and John Doe, Inc.[2] Although Dotson did not at first sue David Rainbolt and Bancfirst Corporation, she mentioned them by name in her petition. Not until June 29, 1989, when she filed her amended petition, did Dotson join David Rainbolt and Bancfirst as defendants to her suit. In her amended petition Dotson claimed that David Rainbolt and Bancfirst were John Doe, and John Doe, Inc., respectively.

In her original petition Dotson alleged that Roberts "should not have discovered [the

---

1. United Community Corporation later changed its name to Bancfirst Corporation.

2. Dotson also joined two other parties as defendants, Thunderbird Financial Corporation, and Thunderbird Executive Corporation, who were also Rainbolt enterprises. Neither company, however, is material to the issues before us in this appeal.

securities claims] any earlier than December 2, 1986." This statement evidently refers to the December 2, 1986 shareholders meeting, at which H.E. Rainbolt told the shareholders, "we can forget about the Buy–Sell Agreement, the stock is worthless."

Dotson alleged state securities law violations, breach of contract, common law fraud, breach of fiduciary duty and other wrongs. David Rainbolt and Bancfirst moved to dismiss Dotson's petition under 12 O.S.Supp. 1984 § 2012.B.6, on the ground that her claims against them were barred by the statute of limitations.[3] The other defendants filed motions for summary judgment. Dotson resisted both motions with a comprehensive statement of facts, supported by over 1,000 pages of documents obtained through discovery in MBank's suit against Davis and Willis, and in Davis and Willis's suit against H.E. Rainbolt. Davis and Willis were represented by the same lawyers who have represented Dotson throughout the suit before us today. David Rainbolt and Bancfirst filed an answer to Dotson's amended petition while their motion to dismiss was still pending. Dotson's reliance on facts outside the four corners of her petition, and David Rainbolt and Bancfirst's filing of an answer while their motion was pending, show that the parties regarded the motion to dismiss as a motion for summary judgment. We, therefore, will also treat it as a motion for summary judgment.

After much procedural wrangling, the details of which are irrelevant to the issues before us in this appeal, the trial court held that Dotson's causes of action against David Rainbolt and Bancfirst were barred by the statute of limitations. The other defendants in this suit are not parties here because the trial court found that there was a question of fact as to whether the statute of limitations barred Dotson's common law fraud claim against them. The trial court held that Dotson's claims against David Rainbolt and Bancfirst were barred because Dotson did not join them as defendants until June 29, 1989, and the amended petition did not relate back to the date when Dotson first filed her suit under 12 O.S.1991 § 2015.C. The trial court expressly held that its order for David Rainbolt and Bancshares, and against Dotson, was a final order and immediately appealable, although issues remained for decision concerning the other defendants. The trial court granted David Rainbolt and Bancshares an attorneys' fee of $44,000, under 71 O.S.1992 Supp. § 408(i), on the ground that Dotson's Oklahoma securities cause of action was "without substantial merit."

The Court of Appeals held that Dotson's amended petition did not relate back to the date of her original petition for statute of limitations purposes, and affirmed the trial court's judgment. The Court of Appeals also affirmed the trial court's holding that David Rainbolt and Bancfirst were entitled to an attorneys' fee, but remanded the matter to the trial court with instructions to reconsider its attorney fee award after a hearing to allocate the time spent by David Rainbolt

---

**3.** A chronology of significant events is set out below:

| DATE | EVENT |
|---|---|
| 09–May–85 | Roberts exchanges Bank stock for Bancshares stock. |
| 25–Jul–86 | Bancshares defaults on 70% of Roberts's semi-annual dividend |
| 02–Dec–86 | Roberts did or could have discovered securities claim (apparently because Rainbolt told the shareholders at the Dec. 2, 1986 shareholders' meeting that their stock was worthless) |
| 09–Jan–87 | MBank sues Davis & Willis because of Bancshares' poor performance |
| 21–Jan–87 | Davis & Willis sue H.E. Rainbolt, et al, John Doe, & John Doe, Inc. Case # 87–45 |
| 01–Feb–87 | Davis tells Roberts of scheme to avoid paying Roberts his preferred dividends |
| 05–May–87 | H.E. Rainbolt tells Bancshares' shareholders that if MBank sues, Bancshares will fail |
| 02–Oct–87 | 1st discovery in 87–45 taken according to plaintiffs' Materials |
| 09–May–88 | 3 yrs from exchange |
| 31–May–88 | Roberts dies |
| 22–Oct–88 | Last discovery in 87–45 according to plaintiffs' materials |
| 30–Nov–88 | Dotson's original petition filed in Case # 88–552 by lawyers representing plaintiff's in 87–45 |
| 01–Feb–89 | 2 yrs from date when Davis tells Roberts of scheme to deprive him of his dividends |
| 29–Jun–89 | Dotson's amendment to petition joining D. Rainbolt and Bancfirst filed |

and Bancfirst's attorneys between their Oklahoma securities law and non-state securities law defenses. Dotson sought certiorari on the grounds that the Court of Appeals (1) improperly held that her amended petition did not relate back to the date she filed her original petition; (2) improperly decided a jury question by deciding when Roberts should have first had notice of the wrongs complained of; and (3) erroneously affirmed the trial court's determination that an attorneys' fee should be awarded against her. We granted certiorari because grounds (1) and (3) present questions of first impression.

## ISSUES

I. Did the trial court err in holding that 12 O.S.1991 § 2015.C did not allow Dotson's amendment to her petition to relate back to the date she filed her original petition?

II. Did the trial court improperly decide a jury issue by holding that there was no disputed issue of material fact as to whether Roberts had discovered that he had a claim not later than February 1987?

III. Did the trial court correctly conclude that David Rainbolt and Bancfirst were entitled to an attorneys' fee?

We answer no to each question.

## DISCUSSION

### I.

We first consider the effect of 12 O.S.1991 § 2015.C on this appeal.[4] Because § 2015.C

---

**4.** In material part 12 O.S.1991 § 2015.C provides:

RELATION BACK OF AMENDMENTS. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

1. Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

2. Knew or should have known that, but for a mistake concerning the identity of the proper

is identical to Rule 15(c) of the Federal Rules of Civil Procedure, we will adopt the construction placed on the federal version of our rules and statutes by the federal courts. *Laubach v. Morgan,* 588 P.2d 1071, 1073 (Okla.1978); *Baker v. Knott,* 494 P.2d 302, 304 (Okla.1972).

■ Dotson claims that because she identified David Rainbolt and Bancshares as the John Doe defendants whom she originally sued in her amended pleading, her amendment should relate back to the date her original petition was filed. Dotson admits that she knew who David Rainbolt and Bancfirst were, but did not learn of all the acts and omissions committed by them until shortly before she filed her amended pleading. Dotson posits that § 2015.C must be construed to mean knowledge of both the name of a new defendant and the acts committed by that defendant. Dotson, however, cites no authority to support her interpretation of § 2015.C. For the reasons discussed below, we reject her interpretation of § 2015.C.

While this is a matter of first impression before us, several recent federal cases have rejected arguments virtually identical to Dotson's on this issue.[5] In *In re ML–Lee Acquisition Fund II,* 848 F.Supp. 527, 553 (D.Del. 1994) the court held:

The real dispute between the parties centers on the third requirement—but for a mistake concerning identity, HW & D should have known that it would have been

---

party, the action would have been brought against him.

**5.** The federal cases that we discuss interpreted Rule 15(c), F.R.C.P. as amended in 1991. The Oklahoma Legislature made the same amendment to § 2015.C in 1993. This amendment, however, is immaterial to the issue before us here. Prior to the amendment of Rule 15(c) and § 2015.C, an amended petition changing a party would relate back only if the amended petition were filed "within the period provided by law for commencing the action." The amended version of Rule 15(c) and § 2015.C merely adds the time allowed by law for service of summons to the period within which the added party must be served with summons. In all respects material to this appeal the pre and post-amendment versions of Rule 15(c) and § 2015.C are identical.

named as a defendant. Plaintiffs do not assert that they made a "mistake" in not naming HW & D in the original pleading. Rather, they appear to be asserting that during discovery they were provided with evidence of HW & D's alleged wrongdoing. A similar argument was rejected by the District Court for the Northern District of California.

> [T]his Court cannot adopt plaintiffs' novel argument that culpability constitutes identity. *Plaintiffs argue that even though they knew that Ruffa provided legal services for Rexplore from the beginning of the litigation, they did not know of Ruffa's identity in terms of culpability. This is an unprecedented and unwarranted extension of Rule 15(c).*

*In re Rexplore, Inc. Sec. Litig.,* 685 F.Supp. 1132, 1145 (N.D.Cal.1988). The Court agrees. *To accept Plaintiffs' liberal reading of Rule 15(c)'s requirements—essentially that notice is sufficient—would render statutes of limitations virtually meaningless.*

[Emphasis added.]

The court in *In re Syntex Corp. Securities Litigation,* 855 F.Supp. 1086, 1099 (N.D.Cal. 1994) reached the same result. There the undisputed facts showed that plaintiffs had known the new defendants' identities for over a year before plaintiffs joined them. The court said:

> Plaintiffs attempt to avoid this problem by arguing that their allegations relate back to the original complaint under Fed. R.Civ.P. 15(c). However, the relation-back doctrine is inapplicable to a newly added defendant unless the defendant "should have known that, but for a mistake concerning identity, the action would have been brought against it." *Louisiana–Pacific Corp. v. ASARCO, Inc.,* 5 F.3d 431, 434 (9th Cir.1993). Thus, *the relevant inquiry focuses on when the plaintiff first had notice of the defendant's correct identity, not on when the plaintiff first had notice of the defendant's culpability. In re*

*Rexplore, Inc. Sec. Litig.,* 685 F.Supp. 1132, 1145 (N.D.Cal.1988); see also *Kilkenny v. Arco Marine Inc.,* 800 F.2d 853, 857 (9th Cir.1986) ("Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party."), cert. denied, 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987). *Since Plaintiffs do not contend that they made a mistake concerning Booth and Hoffmeister's identity, they are not entitled to take advantage of Rule 15(c).*

[Emphasis added.]

Dotson can take no solace from the fact that she named John Doe defendants in her original petition. In *Watson v. Unipress, Inc.,* 733 F.2d 1386, 1389 (10th Cir.1984) the court rejected a similar contention. There, plaintiff amended her complaint to substitute a new party for a John Doe defendant after the statute of limitations had run. The court held that, despite her John Doe pleading, plaintiff would not be allowed to substitute the new defendant for the John Doe defendant after the statute of limitations had run.

We find the foregoing cases convincing and hold that Dotson may not rely upon § 2015.C to extend the statute of limitations based on her claimed lack of knowledge of David Rainbolt and Bancfirst's *culpability.*[6] Dotson knew the *identity* of David Rainbolt and Bancfirst within the statute of limitations. This ends the inquiry. Section 2015.C does not apply.

## II.

▮ Dotson complains that her admission in her petition that Roberts "should not have discovered [the securities claims] any earlier than December 2, 1986," does not bar her action against David Rainbolt and Bancfirst. We disagree. According to Dotson's own version of the facts, H.E. Rainbolt told Bancshares' shareholders, "we can forget about the Buy–Sell Agreement, the stock is worthless," on the date referred to in Dotson's

---

6. Why Dotson chose not to join David Rainbolt and Bancfirst as defendants in her original petition is puzzling because Dotson's lawyers learned of David Rainbolt's acts through discovery in Davis and Willis's suit before they filed Dotson's case. See the chronology in Note 3.

1115

petition, December 2, 1986. Further, the undisputed facts show that Bancshares defaulted on seventy-percent of the semi-annual guaranteed dividend due Roberts on June 30, 1986, and apparently defaulted on all additional dividend payments due Roberts.

Dotson relies on the testimony of her husband, Hugh Dotson, and Davis, to support her claim that Roberts did not know that he had a cause of action. This testimony, however, does not create a question of fact that Roberts either did not know or should not have known, that he had a cause of action when his *guaranteed* preferred stock dividends were not paid. The first default by Bancshares on payment of Roberts's dividends occurred nearly three years before Dotson sued David Rainbolt and Bancfirst.

The statute of limitations for Dotson's Oklahoma securities law claim expired two years "after the untruth or omission was, *or in the exercise of reasonable care should have been* discovered." 71 O.S.1991 § 408(f). [Emphasis added.] We have held that, even where the defendant has the responsibility of a trustee toward the plaintiff,

> the statute of limitations starts to run on a trust beneficiary's claim when it learns it has suffered damage that might be the trustee's fault.

*Mud Trans, Inc. v. Foster–Dickenson & Co.,* 856 P.2d 282, 285 (Okla.1993). Here, Roberts suffered damages on July 25, 1986, when Bancshares defaulted on seventy-percent of his guaranteed dividend. Less than six months later, on December 2, 1986, H.E. Rainbolt told shareholders that their Bancshares stock was worthless. In January or February of 1987, Davis told Roberts that H.E. Rainbolt was scheming to deny Roberts his guaranteed dividends. All of these events occurred more than two years before Dotson sued David Rainbolt and Bancfirst. Given these undisputed facts, the trial court committed no error in holding that Dotson's claims against David Rainbolt and Bancfirst were barred by the statute of limitations.

Dotson argues that later events, such as Bancfirst's purchase of Bancshares for $25,-000, served to extend the statute of limitations. No event that occurred after Roberts learned of the loss of his investment can extend the statute of limitations here, however. The gravamen of Dotson's claims is that David Rainbolt, Bancfirst, and the other defendants committed acts that rendered Roberts's Bancshares stock valueless. Bancfirst's later purchase for $25,000 of stock, which the undisputed facts show to have been worthless at the time, can hardly be used as a basis for extending the statute of limitations.

The trial court correctly held that the statute of limitations barred Dotson's claims.

### III.

Finally, Dotson complains that the trial court abused its discretion in awarding David Rainbolt and Bancfirst a $44,000 attorneys' fee under 71 O.S.1991 § 408(i).[7] Dotson contends that the record will not support the trial court's conclusion that her action was "without substantial merit." *Id.*

■■■ We have not passed on the meaning of the term "without substantial merit" as used in § 408(i). To lack substantial merit we believe that a claim must verge on the frivolous. We see nothing frivolous or insubstantial here. The central issue in the case—and this appeal—was whether Dotson's amendment to her petition adding David Rainbolt and Bancfirst as defendants related back to the date she filed her original petition under 12 O.S.1991 § 2015.C. This was a question of first impression. A party is entitled to litigate a matter of first impression to its conclusion. Thus, we cannot say that the relation back issue lacked substantial merit. Although Dotson did not prevail on it, the trial court erred in holding that her claim lacked substantial merit.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT'S JUDGMENT

---

7. 71 O.S.1991 § 408(i) provides in material part: Any defendant who prevails in an action [for state securities law violations] may recover his reasonable attorneys' fees and costs in the action from the plaintiff if the court, in its discretion, determines that the action was without substantial merit.

AFFIRMED IN ALL RESPECTS BUT THE ATTORNEYS'S FEE AWARD; TRIAL COURT'S ATTORNEY FEE AWARD SET ASIDE.

HODGES, LAVENDER, and SIMMS, JJ., and STRUBHAR and JOHNSON, Special Justices, concur.

KAUGER, V.C.J., and HARGRAVE and SUMMERS, JJ., concur in part, dissent in part.

STRUBHAR and JOHNSON as Special Justices in lieu of ALMA WILSON, C.J., and OPALA, J., who certified their disqualification.