J.D. VOILES, and Esther E. Voiles, Husband and Wife; and Douglas Blackmer Voiles, Appellants,

v.

SANTA FE MINERALS, INC., a Delaware Corporation; Southland Royalty Co., a Delaware Corporation; and Deck Oil Co., an Oklahoma Corporation, Appellees,

v.

OKLAHOMA HUGOTON CORP., Appellant.

Nos. 77971, 77973 to 77975, 77977, 77980 and 77981 to 77994.

Supreme Court of Oklahoma.

Feb. 6, 1996.

As Corrected Feb. 21, 1996.

Michael J. Rovell, Chicago, IL, Admitted Pro hac vice, for Plaintiffs/Appellants and Third-party Defendant/Appellant.

Gary W. Davis, Mark D. Christiansen, Paul D. Trimble, Crowe & Dunlevy, Oklahoma City, James R. Fletcher, Guymon, for Santa Fe Minerals, Inc.

H.B. Watson, Jr., Patricia D. Horn, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, for Southland Royalty Company.

Susan L. Heady, Matthew H. Hand, Amarillo, TX, Douglas Dale, Wright, Dale and Jett, Guymon, for Phillips Petroleum Company.

J. Michael Medina, Keith F. Sellers, Christopher S. Heroux, Holliman, Langholz, Runnels & Dorwart, Tulsa, for Kaiser–Francis Oil Company.

Kirt E. Moelling, Hinkle, Cox, Eaton, Coffield & Hensley, Amarillo, TX, for Helen K. Elrod and C.D. Long [1].

SUMMERS, Justice.

■ Santa Fe Minerals, Inc. and other mineral lessees/working interest owners (collectively "Santa Fe" or "the defendants") were enjoying production from the Guymon–Hugoton field under several virtually identical oil and gas leases executed between 1937 and 1950. In 1989 Oklahoma Hugoton Corporation (Hugoton) approached the lessors of the Santa Fe leases, or their successors, and paid each for what is known as a top lease, an oil and gas lease to take effect only if the pre-existing lease should expire or be terminated. In the process Hugoton obtained from each lessor his or her authority to take the necessary steps to bring suit, in the name of the lessor, but at the expense of Hugoton,

---

1. Counsel must be listed on the Roll of Attorneys and licensed to practice law in this State, or admitted *pro hac vice* by this Court, to appear for parties in an appeal in this Court. All parties in these appeals are represented by counsel who meet this criteria. Individuals who do not meet this criteria and who are listed on briefs or entries of appearance are not listed in the opinion as counsel.

to judicially terminate the earlier leases, called base leases.

As a result ten cases were filed in the District Court of Texas County by the mineral owners/lessors to quiet title to their mineral interests—and to cancel the base leases owned by Santa Fe. The gravamen of each suit was that Santa Fe had, from time to time, withheld production for a period of more than sixty days, and each lease contained a "cessation of production" clause providing for cancellation if production ceased for more than sixty days without commencement of drilling operations.

The defendants are successors in title to the rights in the base leases. One of the defendants, Santa Fe Minerals, Inc. is a defendant in each of the ten actions. Some of the defendants asserted counterclaims against the plaintiffs to quiet title to the base leases in favor of the defendants.

In each of the ten cases Santa Fe filed a third-party claim against third-party defendant Hugoton. Santa Fe's claims were based upon allegations of tortious interference with contract, slander of title, champerty and maintenance. In two cases (C–90–16; C–90–20) Jake L. Hamon, Don O. Chappell, and Hamon Operating Co. asserted a similar third party claim against Hugoton. In one case (C–90–19) defendants Helen K. Elrod and C.D. Long filed a like claim against Hugoton.

The ten cases were consolidated for a non-jury trial. The trial court rejected the plaintiffs' argument that the cessation of production clause terminated the base leases, found the defendants' base leases to be "presently existing", and quieted title to them in the defendants. The court also rendered judgment cancelling and setting aside the top leases.

On the defendants' (third-party plaintiffs') claims for tortious interference with contract the trial court found in favor of the third-party plaintiffs. It awarded a judgment in the amount of $1.00 each in favor Santa Fe, Jake L. Hamon, Don O. Chappell, Hamon

Operating Company, C.D. Long and Helen K. Elrod against Hugoton. On the defendants' claims against Hugoton alleging slander of title and champerty and maintenance judgment was rendered in favor of Hugoton.

The judgment in these ten cases resulted in twenty appeals. We consolidated the twenty appeals under surviving Supreme Court No. 77,971.[2] We granted a motion to retain the consolidated appeal. We deny the motions for oral argument.

## THE CESSATION OF PRODUCTION CLAUSE

██ The primary issue in this appeal is the application of the sixty-day cessation of production clause, and whether it controls the habendum clause in the lease. The habendum clause in the base leases provided for a primary lease term of ten years and as long thereafter as oil, gas, casinghead gas or any of them is produced.[3] The cessation of production clause in the base leases provided for cessation of the lease after the expiration of the primary term if production on leased premises failed, unless the lessee resumed operations for a well within sixty days of the cessation.

This precise issue was resolved in *Pack v. Santa Fe Minerals*, 869 P.2d 323 (Okla.1994). We held there that a lease does not terminate under the terms of a habendum clause when the well was at all times capable of producing in paying quantities. *Id.* 869 P.2d at 327. We then explained that a sixty-day cessation of production clause requires the well to be capable of producing in paying quantities, but that a lease capable of producing in paying quantities will not terminate under that clause for a failure to market gas for a sixty-day period. Rather it is the failure to comply with the implied covenant to market which could result in cancellation of the lease. *Id.* at 329.

Once *Pack* was resolved we requested briefs on the application of *Pack* to this appeal. The parties responded and recog-

---

2. The Appendix lists the 19 appeals consolidated with the surviving appeal Sup.Ct. No. 77,971.

3. In one of the leases the clause provided "... as long thereafter as oil, gas, casinghead gas, cas-

inghead gasoline, or any of them is or can be produced." This different language has no effect on the result in this case.

nized the applicability of *Pack*, unless we wished to overrule it. We do not. We conclude that the judgment of the trial judge quieting title to the base leases in the defendants was correct. We affirm that part of the judgment.

## CANCELLATION OF THE TOP LEASES

 The trial court cancelled and set aside the top leases. A top lease is where the lease taken is subject to a pre-existing lease that has not expired when the second lease was taken. *French Energy, Inc. v. Alexander*, 818 P.2d 1234, 1238 n. 15 (Okla.1991); *Sohio Petroleum Co. v. Grynberg*, 757 P.2d 1125, 1126 (Colo.App.1988). The testimony included an opinion from one witness that top leases were a common and accepted industry practice: "... they are accepted, they are frequent, and they are simply considered to be a legitimate form of business competition in the oil business." Testimony also showed that in the oil and gas industry there are people who take top leases and fund litigation attacking the base lease. In *Nantt v. Puckett Energy Co.*, 382 N.W.2d 655 (N.D. 1986) that court stated that while top leasing was once considered to be "claim jumping" it "has become a useful and widespread business practice in the oil and gas industry in North Dakota, as well as in other regions." *Id.* 382 N.W.2d at 659.

The top lease states that it vests in the top lessee the mineral owner's reversionary interest under the base lease. It further states that possession under the top lease shall vest upon release of the base lease or upon a final an unappealable judgment that the base lease has terminated. The top lease also states that if this possession does not vest then the reversionary interest and top lease granted would terminate "within ten (10) years from the date of this Agreement."

No party has argued that the top lease grants, or was intended to grant, a reversionary interest independent of the adjudication of the base leases in this proceeding. On appeal all parties, including Hugoton, have construed the validity and vesting of the top leases as dependent upon whether the base leases were held invalid in this proceeding.

Hugoton states unequivocally that the "top leases have never taken affect [sic]." We are asked in this case to construe the validity of top leases where all parties have interpreted those leases as contingent upon a judicial determination in this suit on the validity of the base leases. We are not called upon to construe the validity of the top leases in any other context.[4] The base leases are held to be valid, and the trial court's judgment in cancelling the top leases is final, no party having asked us on appeal to let the top leases survive our declaration of the base leases' vitality.

## SLANDER OF TITLE

 Santa Fe appeals the trial court's judgment denying its claim for slander of title. Hugoton relied upon the contingent nature of the top leases to show that slander of title did not occur. Hugoton argued that if the base leases were valid then third parties could merely ignore the top leases. We need not examine this theory, because Hugoton also argued that it had an action brought in good faith to remove a cloud upon the mineral owner's interests arising from the expired base leases. It argued that its good faith was shown, in that it did not bring the suit herein until after a trial court judgment against Santa Fe in a similar suit. The trial court concluded that the elements to a slander of title cause of action were not present.

 The elements of an action for slander of title are: "(1) the uttering and publishing of the slanderous words; (2) that they were false; (3) that they were malicious; (4) that [the plaintiff] sustained special damage thereby; and (5) that [the plaintiff] possessed an estate or interest in the property slandered." *James Energy Co. v. HCG Energy Corp.*, 847 P.2d 333, 340 (Okla.1992), quoting, *Ward v. Mid–West & Gulf Co.*, 97 Okla. 252, 223 P. 170 (1923). To prove malice in its slander of title action Santa Fe must prove actual malice or want of good faith. *Hamilton v. Amwar Petroleum Co., Inc.*, 769 P.2d 146, 149 (Okla.1989). This malice is not ill will or hatred, but a lack of good faith and

---

**4.** Cf. *Nantt v. Puckett Energy Co.*, 382 N.W.2d 655, 661 (N.D.1986), (discussed *Siniard v. Davis*, 678 P.2d 1197 (Okla.App.1984), [released for publication by order of the Court of Appeals] and different standards for judging the validity of top leases).

want of probable cause. *Id.* 769 P.2d at 148–149.

In *Pack v. Santa Fe Minerals, supra,* we stated that the question presented in that case was one of first impression. *Id.* 869 P.2d at 325. Thus, Santa Fe's argument rests upon the unstated proposition that a mineral lessor's act is malicious or in bad faith when it challenges a base lease by a combined top lease and quiet title proceeding in an issue of first impression. In a different type of suit we said that: "A party is entitled to litigate a matter of first impression." *Dotson v. Rainbolt,* 894 P.2d 1109, 1115 (Okla. 1995).[5] Additionally, counsel for Hugoton was of the impression that the mineral owners had a claim that was at least colorable because of a favorable trial court judgment in a similar case. We conclude that the evidence fails to show malice, and affirm the trial court's judgment denying the slander of title claims against Hugoton.

## TORTIOUS INTERFERENCE WITH CONTRACT

██ The trial judge made a finding that Hugoton intentionally interfered with the contracts (leases) between the mineral owners and their lessees. However, the trial judge also concluded that Hugoton was performing an important service for the mineral owners and awarded only a nominal amount. We reverse the judgment that Hugoton intentionally interfered with the contracts and business relations of the defendants.

██ We need not examine in detail the particular elements of a cause of action based upon interference with contract.[6] Simply, Hugoton cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract. This concept was explained in *Ray v. American Nat. Bank & Trust Co.,* 894 P.2d 1056 (Okla.1994):

> Ray contends that Bank wrongfully interfered with her employment contract with Young, and claims a right to punitive damages as a result. Bank, however, was at all times acting on behalf of Young. *Bank could not wrongfully interfere with a contract concerning which it was acting in a representative capacity for a party.* A cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms. The cause of action sounds in tort. *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 427 (Okla., 1979). *Bank was a party to the contract, in its representative capacity.* Thus, we hold that the trial court properly granted summary judgment to Bank on this issue.

*Id.* 894 P.2d at 1060, (emphasis added).

If Hugoton was acting as agent for the mineral owners in the litigation with the base lessees the defendants' claim for interference with contract is, as a matter of law, without foundation.

On appeal Santa Fe points to testimony by two mineral owners, and argues that Hugoton filed suits without express authorization from the owners, and that some of the owners were of the opinion that they could not control the litigation. The testimony is not sufficient to strip Hugoton of its status as agent for the mineral owners for the purpose of the leases and the litigation.

The mineral owners received a letter explaining Hugoton's position, with a lease and agreement for signature.[7] The second paragraph on the first page of the letter to the mineral owners states that:

> "a plaintiff must show: 1. That he or she had a business or contractual right that was interfered with. 2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable. 3. That damage was proximately sustained as a result of the complained-of interference." *Id.* 595 P.2d at 428.

---

5. In *Dotson* we construed the statutory language of "without substantial merit" found in 71 O.S. 1991 § 408(i). We said therein that to lack substantial merit a claim must verge on the frivolous. *Id.* 894 P.2d at 1115. We then concluded that the first impression issue did not lack substantial merit. *Id.*

6. In *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 427 (Okla.1979) we stated that to recover in an action for malicious interference with contract or business relations

7. The letter was from Snyder–Fullbright Company. The parties agree that Snyder–Fullbright was acting on behalf of Hugoton.

Our client has authorized us to extend to mineral owners in the Section the following offer which shall remain open for a period of twenty (20) days from the date of this letter:

1. *A legal action will be filed on the mineral owners' behalf seeking a judgment that the existing lease has terminated.* Our client will pay 100% of all legal, brokerage and engineering costs associated with the legal action;

The first page of the agreement contains the following:

*Lessor hereby appoints Lessee [Hugoton] as their special agent* with full and complete power to take all necessary steps to obtain a release or *judicial termination* of the above described Oil and Gas Lease ... *Said power of agency shall include ... the power to hire and retain legal counsel to file the litigation in the name of the Lessor;* and the power to pursue such legal action in the courts of the State of Oklahoma in the name of and on behalf of the Lessor. (emphasis added)

The testimony shows that each of the mineral owners received the letter and signed the agreement. In one instance the mineral owners signed a limited power of attorney containing language similar to that in the agreement. Some of the mineral owners obtained little or no advice on whether to sign the agreement, while others consulted lawyers or friends. Some of the mineral owners said that they either ignored the provisions in the agreement appointing Hugoton as agent, or simply did not understand that a suit would be filed on their behalf.

One mineral owner signed the agreement for the amount paid by Hugoton although he was of the opinion that Hugoton would be unsuccessful. Another mineral owner testified .that she was motivated to sign the agreement in hopes of obtaining the higher royalty fraction in the top lease, additional drilling and more production, and that she knew that she was authorizing legal proceedings to attack the base lease. She indicated that the agreement for the top lessee to absorb the litigation costs made it an attractive offer for her. Other witnesses also testified that they knew that by signing the agreement they were authorizing the top lessee to initiate litigation in their names, and that they could not have afforded to bring the action as individuals.

Some mineral owners testified that if they had not been approached by Hugoton they would not have filed suit, and that their interests would not have supported the litigation costs. Some stated that they did not know whether Santa Fe had violated their leases, and they had left that determination to Hugoton. The complaints of the mineral owners against the base lessees were general in nature: they desired increased production, and a bigger royalty. In short, they wanted more money. Hugoton appeared on the scene and told them that they might be entitled to more.

We conclude that Hugoton was acting as agent for the mineral owners in revisiting their contractual relationship with the base lessees. The defendants' claims against Hugoton for interference with contract cannot prevail, *Ray v. American Nat. Bank & Trust Co., supra,* and the one-dollar judgments against Hugoton are reversed.

## CHAMPERTY AND MAINTENANCE

Santa Fe and some of the other defendants filed third-party claims against Hugoton alleging champerty and maintenance. The trial court granted judgment in favor of Hugoton on these claims. The defendants (third-party plaintiffs) appealed this disposition.

▇▇▇▇ Champerty is an officious intermeddling in a suit by a stranger, by maintaining or assisting either party with money or otherwise to prosecute or defend it, and dividing the proceeds obtained in the suit between the party and the stranger. *Mitchell v. Amerada Hess Corp.,* 638 P.2d 441, 444 (Okla.1981); *Hall v. State,* Del.Supr., 655 A.2d 827, 829 (1994). Maintenance is "an officious intermeddling in a suit which in no way belongs to the intermeddler, by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it." *Hall v. State,* 655 A.2d at 829. Champerty is maintenance with compensation derived from the proceeds of the suit. *United States v. Algernon Blair, Inc.,* 795 F.2d 404 (5th Cir.1986).

Both sides to this dispute rely upon *Mitchell v. Amerada Hess Corp.,* 638 P.2d 441 (Okla.1981). Santa Fe argues that in *Mitchell* the court had an opportunity to state that champerty was no longer recognized in Oklahoma, and the court declined to say so. Santa Fe states that this must mean that they may bring a champerty claim against Hugoton. Hugoton argues that it was possessed of an interest in the litigation apart from the alleged champertous agreement, and that this interest arose from the trial court's opinion in *Pack, supra.* Hugoton points to *Mitchell* and its determination that a claim of champerty did not apply there because the party assisting with the litigation possessed an interest in the litigation apart from the alleged champertous agreement. *Id.* 638 P.2d at 445. Champerty does not apply to an ordinary oil and gas lease. *Janeway v. Whitaker,* 106 Okla. 83, 233 P. 197 (1925). Is it champerty for the mineral lessee to assist the lessor with a quiet title proceeding?

In *Lott v. Kees,* 276 Ala. 556, 165 So.2d 106 (1964) that Supreme Court explained that where the leases were characteristic of the industry, and the lessors were without funds to maintain the litigation "we do not think the advancement of financial help violated any principle of law or public policy." *Id.* 165 So.2d at 111. In *Lott* and *Mitchell* the courts noted that the circumstances that created a public policy for a claim of champerty have disappeared. *Mitchell,* 638 P.2d at 444, 446. This is also shown by those opinions explaining that except in certain real estate contracts, a stranger to the champertous agreement no longer has a champerty claim, but must seek redress in the tort actions of malicious prosecution, abuse of process, or wrongful initiation of litigation. *McCullar v. Credit Bureau Systems, Inc.,* 832 S.W.2d 886, 887, 888 (Ky.1992), (citing cases). The Oklahoma champerty statutes do provide a defense in certain circumstances, but they are not before us in this controversy.[8]

Hugoton points to the language of the trial judge in this case. He concluded that Hugoton was "a big benefit to the mineral owners" by "policing the oil companies" and keeping them honest. The trial judge concluded that

the threat of many small mineral owners banding together with litigation support from companies like Hugoton insured that the terms of their base leases would be fulfilled. The trial court also concluded that this threat had the effect of helping the mineral owners obtain higher royalties and more income from their leases.

Santa Fe argues that allowing this type of litigation support fosters unnecessary litigation and increased costs to the mineral lessees. In sum, Santa Fe asks for a champerty rule that would prohibit mineral owners from obtaining litigation assistance from top lessees in challenges to the continued validity of base leases.

This State has a strong public policy against the forfeiture of leases. *Stewart v. Amerada Hess Corp.,* 604 P.2d 854, 858 (Okla.1979). One seeking to forfeit a lease must overcome this burden, and this in itself discourages some claims. Additionally, the torts of malicious prosecution and abuse of process are recognized in this State. *Greenberg v. Wolfberg,* 890 P.2d 895 (Okla.1994). Santa Fe is not without remedies for vexatious litigation.

Public policy also favors allowing a party to litigate a matter of first impression. *Dotson v. Rainbolt, supra.* We agree with the trial court that in this case Hugoton served an important interest of the mineral owners in having their first impression case heard in a court of law. The trial court's denial of the third party claims of champerty is supported by the evidence and circumstances in this case.

## THE IMPLIED COVENANT TO MARKET

During the appeal Hugoton requested that this cause be remanded to the trial court for the purpose of taking testimony on a claim based upon breach of the implied covenant to market. This issue was not raised in the trial court. A party cannot raise new non-jurisdictional claims or defenses on appeal. In *Union Texas v. Corporation Commission,* 651 P.2d 652 (Okla.1981)

---

**8.** See 21 O.S.1991 §§ 547, 548. None of the appellate briefs cite these statutes and we are not

called upon by the parties to construe or apply these statutes in this controversy.

we said: "The parties to an action, having presented their case for defense to the trial court upon a certain theory, are bound thereby and will not be permitted to change the theory of the case upon appeal." *Id.* 651 P.2d at 664. The defendants' obligations with regard to an implied covenant to market were not, and are not, part of this suit. The request for a remand on this issue is denied.

## COSTS

 Appellee Kaiser–Francis Oil Company, a defendant (Kaiser–Francis) argues that an award of costs pursuant to 12 O.S.1991 § 928 and 942 is mandatory. It seeks its costs incurred in the trial court and on appeal. On appeal Hugoton has characterized its trial court suits as having been to quiet title, and this is not disputed by the defendants. For the purpose of Appellee's request for costs we assume that characterization is correct.

 A quiet title action may be used as an equitable proceeding to determine ownership of oil and gas lease or mineral rights. *Crockett v. McKenzie,* 867 P.2d 463 (Okla. 1994); *Atlantic Richfield Co. v. Tomlinson,* 859 P.2d 1088 (Okla.1993); *I.C. Gas Amcana, Inc. v. J.R. Hood,* 855 P.2d 597 (Okla.1992). The allowance of costs is based upon statute. *Gaylord v. State ex rel. Dept. of Highways,* 540 P.2d 558, 562 (Okla.1975). Although a quiet title statute allows attorney's fees to the prevailing party in certain limited circumstances, it does not provide for costs.[9]

We have explained that in an action to quiet title, being one in equity, costs are taxed pursuant to 12 O.S. § 930. *Wheeler v. Benson–Taylor, Inc.,* 394 P.2d 523, 528 (Okla. 1964), quoting, *Midland Savings & Loan Co.*

*v. Carpenter,* 170 Okla. 539, 40 P.2d 1052 (1934). Section 930 states:

> In other actions, the court may award and tax costs, and apportion the same between the parties on the same or adverse sides, as in its discretion it may think right and equitable.

12 O.S.1991 § 930.

This view of applying § 930 to quiet title proceedings is consistent with our opinion in *Sinclair Oil & Gas Company v. Bishop,* 441 P.2d 436, 448 (Okla.1967) where we reversed the trial court's judgment cancelling the lease and made the lessees prevailing parties on that action, but made them bear the costs on appeal. We reject the view of Kaiser–Francis that awarding costs in its favor is mandatory.

 Costs may be either "of course" (12 O.S.1991 § 928) or equitable litigation expenses (§ 930). *Fleet v. Sanguine, Ltd.,* 854 P.2d 892, 902 (Okla.1993) Allowance of equitable costs is within the discretion of the chancellor, and when granted by the trial court it is subject to review by this Court in a proper proceeding. *Id.* Costs are usually taxed in the court where they occur. *Chamberlin v. Chamberlin,* 720 P.2d 721, 727 (Okla.1986). The time to assert a claim for equitable litigation costs is in the trial court before the appeal. The trial court is suited for determining contested cost issues in equitable proceedings. Kaiser–Francis does not point to any order of the trial court on costs that it seeks to challenge. We decline its invitation to determine in the first instance the propriety of trial court costs. The request for costs on appeal is denied. *Sinclair Oil & Gas Company v. Bishop, supra.*

---

9. In *Walden v. Hughes,* 799 P.2d 619 (Okla.1990) we observed that "We have consistently held that in actions to quiet title and for injunctive relief the prevailing party is not entitled to attorney fees." *Id.* 799 P.2d at 620. Attorney fees were awarded in *I.C. Gas Amcana, Inc. v. J.R. Hood, supra.* Section 1141 of Title 12 provides for prevailing party attorney's fees in the circumstance where a written correction of a title defect has been refused without reasonable cause and an action is brought. Our Court of Appeals has construed this section to mean that attorney's fees are not recoverable where the dispute is reasonable. *See Harlow Corp. v. Bryant Explora-*

tion, 816 P.2d 1154 (Okla.App.1991), (released for publication by order of Court of Appeals, Div. 3), (in action by mineral lessee to quiet title as to second lessee's lease § 1141 attorney's fees were not recoverable in a legitimate dispute between competing mineral leasehold interests); *Apache Corp. v. State ex rel. Commissioners,* 845 P.2d 1281 (Okla.App.1992), (released for publication by order of Court of Appeals, Div. 1), (in quiet title action involving mineral estate § 1141 attorney's fees were not warranted because dispute was reasonable). We are not called upon to, and we do not, review the correctness of those decisions herein.

## CONCLUSION

We affirm the judgment of the trial court upholding the validity of the defendants' base leases. We affirm its judgment cancelling the top leases. We reverse the judgment of the trial court that Hugoton intentionally interfered with the contractual relations of the defendants. We affirm its judgment in favor of Hugoton on defendants' claims against Hugoton for slander of title and champerty and maintenance. The motion of Kaiser–Francis Oil Company for costs is denied.

KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, SUMMERS, WATT, JJ., concur.

ALMA WILSON, C.J., and OPALA, J., concur in part, dissent in part.

HODGES, J., not participating.

## APPENDIX

| APPEAL | STYLE |
|---|---|
| 77,973 | J.D. Voiles and Esther E. Voiles, Husband and Wife; and Douglas Blackmer Voiles, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; Southland Royalty Co., a Delaware corporation; and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,974 | Dempsey Noble and Bernice Noble, Husband and Wife; Norma Taggert a/k/a Joanne Taggert; et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; and Amoco Production Co., a Delaware corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,975 | Dempsey Noble and Bernice Noble, Husband and Wife; Norma Taggert a/k/a Joanne Taggert; et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; and Amoco Production Co., a Delaware corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,977 | Mildred Nash Daily, by Barbara Jean McClellan, Attorney-in-Fact; and Howard Clark Nash, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; Southland Royalty Co., a Delaware corporation; and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,980 | Tjuana Bernice Massa, Appellant, v. Santa Fe Minerals, Inc., a Delaware corporation; Southland Royalty Co., a Delaware corporation; Helen K. Elrod; and C.D. Long, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,981 | Mildred Nash Daily, by Barbara Jean McClellan, Attorney-in-Fact; and Howard Clark Nash, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; South land Royalty Co., a Delaware corporation; and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,982 | Viola Arlene Nickel, A.H. Schaapveld, Jess Little, et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, B.P. Exploration, Inc., et al., Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,983 | Milton and Mary E. Galliart, Husband and Wife; J.D. and Esther Elmina Voiles, husband and wife; et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; Kaiser–Francis Oil Co., a Delaware corporation; et al., Appellees v. Oklahoma Hugoton Corporation, Appellant. |
| 77,984 | Viola Arlene Nickel, A.H. Schaapveld, Jess Little, et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, B.P. Exploration, Inc., et al., Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,985 | Milton and Mary E. Galliart, Husband and Wife; J.D. and Esther Elmina Voiles, husband and wife; et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; Kaiser–Francis Oil Co., a Delaware corporation; et al., Appellees v. Oklahoma Hugoton Corporation, Appellant. |
| 77,986 | Betty J. Hoeme, Larry O. Hoeme, Deborah C. Hoeme, et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, Southland Royalty Co., a Delaware corporation, Mapco Oil & Gas Co., a Delaware corporation, and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,987 | Gleaves L. Stallard and Umburta Stallard, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; and Phillips Petroleum Company, a Delaware corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,988 | Betty J. Hoeme, Larry O. Hoeme, Deborah C. Hoeme, et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, Southland Royalty Co., a Delaware corporation, Mapco Oil & Gas Co., a Delaware corporation, and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,989 | Tjuana Bernice Massa, Appellant, v. Santa Fe Minerals, Inc., a Delaware corporation; Southland Royalty Co., a Delaware corporation; Helen K. Elrod; and C.D. Long, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,990 | Gleaves L. Stallard and Umburta Stallard, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation; and Phillips Petroleum Company, a Delaware corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant. |
| 77,991 | Pete E. Pauls and Leona Pauls, Husband and Wife; Raymond Peck and Orlene Peck, Husband and Wife, et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corpo |

APPEAL STYLE

ration, Frontier Fuels, Inc., a Delaware corporation, et al., Appellees, v. Oklahoma Hugoton Corporation, Appellant.

77,992 Pete E. Pauls and Leona Pauls, Husband and Wife; Raymond Peck and Orlene Peck, Husband and Wife, et al., Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, Frontier Fuels, Inc., a Delaware corporation, et al., Appellees, v. Oklahoma Hugoton Corporation, Appellant.

77,993 Larry Lee Kauffman, Roy Edwin Kauffman, Glenn Allen Kauffman, and Esther Wallace, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, Southland Royalty Co., a Delaware corporation, and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant.

77,994 Larry Lee Kauffman, Roy Edwin Kauffman, Glenn Allen Kauffman, and Esther Wallace, Appellants, v. Santa Fe Minerals, Inc., a Delaware corporation, Southland Royalty Co., a Delaware corporation, and Deck Oil Co., an Oklahoma corporation, Appellees, v. Oklahoma Hugoton Corporation, Appellant.